## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

RICHARD HOBSON,

       *Plaintiff,*

  vs.                               Case No. 19-02765-EFM

NEIGHBORS CONSTRUCTION CO., INC.
and
CENTURY BUILDING SOLUTIONS, INC.

       *Defendants.*

## MEMORANDUM AND ORDER

Plaintiff Richard Hobson brings claims for disability discrimination and retaliation under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), violation of the Kansas Wage Payment Act, K.S.A. § 44-313 et seq. ("KWPA"), breach of contract, and unjust enrichment against Defendants Neighbors Construction Co., Inc. ("Neighbors") and Century Building Solutions, Inc. ("Century"). Defendants have filed a Partial Motion to Dismiss (Doc. 4) seeking to dismiss Hobson's claims for breach of contract and unjust enrichment. They contend that Hobson fails to allege facts that sufficiently establish he had a contract with Defendants in the first place and that his equitable claim for unjust enrichment is barred by his concurrent legal claim for statutory relief under the KWPA. For the reasons stated in more detail below, the Court grants in part and denies in part the Defendants' Partial Motion to Dismiss.

## I.     Factual and Procedural Background[1]

Hobson alleges that Neighbors and Century are commonly owned and managed companies.  He further alleges that Neighbors exercises extensive control over the operations of Century, including making decisions for Century regarding personnel, pay and salary, and general finances.

Hobson began working for Century in August 2011 in a sales position at Century's office. He was Century's only employee dedicated to sales.  He was paid per an informal employment agreement in the form of salary plus commission for every sale made.  He worked in this position until his termination in late summer of 2018.  During that time, he received no disciplinary actions, nor did Century express any concerns about the quality of his work.

In July 2018, Hobson disclosed to Century that he had been diagnosed with cancer which would require surgery and a lengthy period of recuperation.  On or about July 12, Hobson made an inquiry about protections afforded by the FMLA, including a period of leave and work-at-home privileges.  He was told by an unidentified person that the FMLA would afford him those protections.  He also disclosed the date of his upcoming surgery to Century.

Following the disclosure of his diagnosis to Century, Nancy Neighbors, one of the owners of Century, began to treat Hobson differently.  She ordered that Hobson no longer receive commission on cash sales, unlike before his disclosure.  She also put higher pressure on Hobson to make more sales despite Hobson already having an objectively high sales volume during the prior month.

---

[1] The facts are taken from Hobson's Complaint and are accepted as true for the purposes of this ruling.

Before Hobson had disclosed his diagnosis to Century, he had made a sale to a regular customer at a reduced rate. He did so with the express approval of Nancy Neighbors's son, Aaron Neighbors, because the company was interested in keeping a good relationship with this regular customer. Century still profited from the sale, but not by as much as usual.

However, Nancy and Roger Neighbors disapproved of the sale and told Hobson to contact the customer and seek the full price the customer would typically pay. Hobson did so, and the customer agreed to the usual rate despite the earlier promise of a reduced rate. Even so, regardless of their awareness that Hobson had done as they asked and secured an agreement to pay the usual price, the owners of Century fired Hobson shortly afterward.

Roger Neighbors promised Hobson that the commissions for Hobson's sales in July would still be paid. However, Hobson never received these commissions. As a result, a portion of Hobson's work remains unpaid.

Hobson alleges violations of the ADA for his treatment and termination from Century, violation of the KWPA for his unpaid July 2018 commissions, and, alternatively, breach of contract and unjust enrichment for those same commissions. Neighbors and Century move to dismiss the breach of contract and unjust enrichment claims.

## II.     Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[2] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible

---

[2] Fed. R. Civ. P. 12(b)(6).

on its face.' "[3]  A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[4]  The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[5]  Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[6]  Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[7]  If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' "[8]

### III.    Analysis

#### A.    Breach of Contract

Defendants maintain that Hobson has failed to adequately allege that he had a contract with either Neighbors or Century, and as such cannot have stated a claim upon which relief can be granted because there was no contract to breach.  Hobson argues that while a formal written contract does not exist, he still alleges enough facts in his Complaint to demonstrate that an oral

---

[3] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[5] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[6] *Iqbal*, 556 U.S. at 678–79.

[7] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[8] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

contract existed between Hobson and the Defendant.[9] He alternatively argues that a contract between him and Roger Neighbors was created when Roger promised to pay Hobson the yet-unpaid July commissions.  Defendants counterargue that the promise between Hobson and Roger Neighbors was not a contract because it lacked consideration. The Court agrees with the Defendants that Hobson's Complaint fails to allege sufficiently specific facts to indicate the existence of an employment contract with the Defendants and that Roger Neighbors's alleged promise to Hobson does not constitute a contract because it lacks consideration.

Under Kansas law, the elements of a contract are as follows: "(a) [a] promisor and a promisee each of whom has legal capacity to act as such in the proposed contract; (b) manifestation of assent by the parties who form the contract to the terms thereof and by every promisor to the consideration for his or her promise; (c) a sufficient consideration; and (d) the transaction, though satisfying the foregoing requirements, must be one that is not void by statute or by special rules of the common law."[10]

### 1.    *Employment Contract*

The first contract Hobson alleges exists is his employment contract with "Defendant."[11] The most relevant element for the Court to consider for the employment contract is the second: the manifestation of assent to the terms of the contract.  To prove the existence of this contract, it must be established what the terms of the contract were, and there must be evidence that the parties

---

[9] Hobson does not allege in his Complaint with which Defendant he had a contract. He refers only to "Defendant" in the singular, indicating he had a contract with only one or the other.

[10] *O'Neill v. Herrington*, 49 Kan. App. 2d 896, 317 P.3d 139, 144 (2014) (citing Restatement (First) of Contracts § 19 (Am. Law Inst. 1932)).

[11] *See* footnote 9.

agreed to those terms.  Hobson and Defendants dispute how specifically the terms of a contract must be laid out to survive dismissal.

To establish how specifically the terms of a contract must be laid out at the pleading stage, Defendants rely primarily on *Rukavitsyn v. Sokolov Dental Laboratories, Inc.*[12]  In pointing out the complaint's deficiencies, the court in *Rukavitsyn* said, "No allegation is made concerning whether Plaintiffs were ever paid by the hour in reality, the identity of the person who promised to pay Plaintiffs by the hour, whether such promise was written or oral, or any other circumstances or conduct that would give rise to the plausible inference the alleged agreements existed.  Even more conspicuously, Plaintiffs do not specify the hourly rate at which the alleged agreements provided they would be paid."[13]  Hobson's Complaint is similar to Rukavitsyn's in several aspects in terms of lack of specific terms of the alleged contract.  Hobson does not note the date on which this contract was made, only the month he started working for Century: August 2011.[14]  He does not note with whom specifically he made the alleged contract.  Importantly, at no point in the Complaint does Hobson allege the amount of money he was earning, the amount he should have received as commissions in July 2018, or any other dollar figure.  The court in *Rukavitsyn* saw fit to state that the plaintiff's failure to allege the amount of money at issue was particularly conspicuous.[15]  Furthermore, Hobson only refers to "Defendant" when referring to the party with whom he made the alleged contract; he does not allege which Defendant he means.

---

[12] 2012 WL 3066578 (D. Kan. 2012).

[13] *Id.* at *7.

[14] Doc. 1, at 4.

[15] *Rukavitsyn*, 2012 WL 3066578 at *7.

However, in the context of this case, many of those similarities prove superficial and insufficient to justify dismissal.  The purpose of pointing out the list of the complaint's deficiencies in *Rukavitsyn* was to indicate that there was doubt that Rukavitsyn ever had an employment agreement with his employer.  Here, there are several places where Hobson's Complaint is more specific than the complaint in *Rukavitsyn*, indicating that an employment agreement did exist.  First, Hobson notes that Century actually paid his commissions, "typically . . . at the end of each month."[16]  This indicates that payment of commissions was at least done at some time, and likely for the duration of his employment.  He also alleges what he was obliged to do to earn these commissions: make sales for Century.  This in turn indicates that he must have made an agreement with someone in management at Century, as he was paid for work performed.  Though he does not allege with whom in particular he made this agreement, he alleges that he made an agreement with someone with the authority to hire him and that he and his employer both followed this agreement.  This sufficiently indicates an agreement existed even without the specific name of the other person.  Given Hobson's alleged facts, Hobson's Complaint is much more complete than Rukavitsyn's.

Even so, the Court notes that the lack of any information about how much money is at issue in this case is concerning.  Hobson's commission rate, the usual price of the goods he sells for which he earned commissions, what he typically makes, and most importantly, how much money he hopes to get back from Century would helpfully flesh out the details of the alleged contract.  Also, while Hobson alleges that Neighbors and Century are integrated employers for FMLA purposes and joint employers for ADA purposes, they remain distinct entities.  If Hobson is alleging that he had contracts with both companies, he should refer to them as "Defendants."  If

---

[16] Doc. 1, at 4.

he only alleges he had a contract with one of them, he should specify which one.  This also applies to the whole of Hobson's Complaint; Hobson frequently refers only to "Defendant" when he should either properly refer to "Defendants" or specifically name which party is being discussed. Because of these absent pieces of vital information, the Court cannot conclude that Hobson sufficiently alleges the existence of an employment contract.

2.     *Roger Neighbors's Promise*

The second contract that Hobson alleges exists is the contract formed when Roger Neighbors promised to pay Hobson the July 2018 commissions.  For the alleged contract formed from Roger Neighbors's promise, the third element, the existence of sufficient consideration, is most relevant to the Court's analysis, as Defendants claim there was no adequate consideration.

The Court holds that Roger Neighbors's alleged promise to Hobson regarding the payment of the July 2018 commissions does not constitute a contract.  Hobson does not note the date on which Roger Neighbors allegedly promised to pay Hobson his commissions, but its relative placement in the timeline of events Hobson's Complaint lays out leads the Court to believe that Roger Neighbors made this alleged promise after the July commissions were earned.  It is firmly established that "past consideration is simply no consideration at all."[17]  If Roger Neighbors promised to pay Hobson for the July 2018 commissions he had earned prior to the promise, this promise is unenforceable because it lacks consideration.  If this promise was made before Hobson made the sales that earned his July 2018 commissions, this should be made clear by providing the date of the promise.

---

[17] *Claytor v. Computer Assocs. Int'l, Inc.*, 262 F. Supp. 2d 1188, 1198 (D. Kan. 2003).

In all, Hobson does not allege a facially plausible breach of contract claim.  Thus, the Court grants the dismissal of Count IV.  However, the Court will order that Hobson be given a window of time in which to amend his Complaint and provide more detail about the money at issue in this case.  He should also amend his Complaint to be more precise about which party or parties are being discussed in all his claims.  Hobson may file his amended complaint no later than July 31, 2020.

**B.      Unjust Enrichment**

Now the Court considers whether Hobson can submit a claim for relief for unjust enrichment while also seeking relief under the KWPA.  Defendants maintain that because the KWPA provides an adequate remedy at law for the alleged unpaid commissions, the KWPA preempts a claim for unjust enrichment arising from those same alleged unpaid commissions.  Hobson acknowledges that he cannot recover damages under both theories, but he argues that does not preclude him from submitting both arguments at the pleading stage of the case.  The Court agrees with Hobson.

Federal Rule of Civil Procedure 8(d)(2) provides: "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."[18]  Rule 8(d)(3) adds: "[a] party may state as many separate claims or defenses as it has, regardless of consistency."[19]  Applying these rules, this Court has found that concurrent

---

[18] Fed. R. Civ. P. 8(d)(2).

[19] Fed. R. Civ. P. 8(d)(3).

claims for breach of contract and unjust enrichment can exist in the same complaint.[20]  As long as it is unclear whether the parties are bound by a written contract, the plaintiff is free to claim both breach of contract and unjust enrichment.[21]  More recently, the Court held that if a defendant contests that the terms of a contract apply to it, it cannot simultaneously maintain that an unjust enrichment claim should be dismissed because of the existence of said contract and the legal remedies it may provide.[22]

This case is substantially similar.  Here, while a KWPA claim is a statutory claim and a breach of contract claim is a common law claim, they share an important similarity: both provide a legal remedy, so an award on either claim would necessarily preempt an award for an unjust enrichment claim.  Hobson agrees with Defendants that if his KWPA claim should go forward and succeed, there will be no cause to additionally award him for his unjust enrichment claim, thereby removing the threat of duplicative reward. However, at this time no judgments have been made about Defendants' liability under the KWPA, and Defendants deny that such liability exists. Indeed, as Hobson correctly notes, Neighbors denies ever having been an employer of Hobson in the first place, which would necessarily preclude any claim against Neighbors under the KWPA as well as under his breach of contract claim.  Because of this, it is reasonable for Hobson to provide a claim in the alternative as allowed by Rule 8 should his KWPA claim fail.

Defendants are correct that a plaintiff cannot receive relief under the KWPA and under an unjust enrichment claim at the same time.[23]   "[A] remedy at law must be unavailable before

---

[20] *Ice Corp. v. Hamilton Sundstrand Inc.*, 444 F. Supp. 2d 1165, 1171 (D. Kan. 2006).

[21] *Id.*

[22] *Rezac Livestock Comm'n Co., Inc. v. Pinnacle Bank*, 255 F. Supp. 3d 1150, 1175 (D. Kan. 2017).

[23] *Nelson v. Nelson*, 288 Kan. 570, 205 P.3d 715, 734 (2009).

equitable relief is allowed."[24]   However, Hobson is not claiming that he should receive relief for both the KWPA and unjust enrichment; he claims only that he is entitled to either one or the other. He has said he will drop the unjust enrichment claim if it is ever determined that Defendants are liable under the KWPA.  At this point in this case, Defendants maintain that they are not liable under the KWPA.  If they are correct, and the KWPA will not offer Hobson any relief, then the concurrent KWPA claim does not actually bar an unjust enrichment claim.  For as long as Defendants assert that they are not liable under the KWPA and under breach of contract law, it is too early to conclude that a claim for relief for unjust enrichment should be dismissed.  For this reason, Count V will not be dismissed.  However, the Court reiterates that in Count V, Hobson improperly refers to "Defendant" in the singular, creating confusion about whether he wishes to make this claim against Century, Neighbors, or both.  This should be remedied in the amended complaint that the Court is giving Hobson leave to file.

IT IS THEREFORE ORDERED that Defendants' Partial Motion to Dismiss (Doc. 4) is GRANTED IN PART, DENIED IN PART.  Count IV is dismissed, but Count V is not.

IT IS FURTHER ORDERED that Hobson may file an amended complaint no later than July 31, 2020.

IT IS SO ORDERED.

Dated this 10th day of July, 2020.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[24] *Id.*